**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


CHRISTINE MOYES,

      Plaintiff,

vs.                                CASE NO.: 4:09-CV-334-SPM/WCS

The KEISER SCHOOL, INC.
d/b/a KEISER UNIVERSITY,

      Defendant.

_____/


     This cause comes before the Court pursuant to a motion for summary

judgment and memorandum of law (doc. 55) filed by Defendant Keiser School,

Inc. ("Keiser").  Plaintiff Christine Moyes ("Moyes") filed a response and

memorandum of law in opposition (doc. 69).  For the reasons set forth below, the

Court denies Keiser's motion for summary judgment on all Counts.


**Background**

     Moyes brought this employment discrimination case against her former

employer, Keiser, alleging disability discrimination, gender discrimination, and

retaliation for taking medical leave. Moyes alleges that she was the victim of

disparate terms and conditions, harassment, and termination on account of her

disability and because of her gender. She also alleges that she was wrongly and unlawfully retaliated against for taking FMLA leave for which she was eligible.

Moyes began working for Keiser in August of 1995, where prior to being fired she was most recently employed as a graphics instructor.  While employed with Keiser in April of 2005, Moyes suffered a stroke. As a result of the stroke, Moyes alleges to have suffered a brain hemorrhage, partial paralysis to one side of the body, sensory deficit disorder as well as an array of lingering physical limitations. On May 2, 2005, Moyes notified Keiser of the need to take FMLA covered leave as a result of her stroke and resulting medical conditions.

On July 20, 2005, Moyes received medical release to return to teaching at Keiser. She subsequently informed Keiser that she would be returning to work on July 25,2005. Moyes alleges that at that time, Keiser informed her that she had been replaced and could return to work only in a non-teaching capacity. Although Keiser agreed to reinstate Moyes as a full time faculty member on August 29,2005, Moyes alleges that this was agreed upon only after Moyes had obtained the services of an attorney who contacted attorneys for Keiser.  When Moyes did return to work, she did so in an administrative capacity until resuming classroom teaching duties on August 29, 2005.

Upon her return to work, during the 2005/06 school year Moyes was assigned to work introductory level classes offered in the evenings. Moyes alleges that the class assignments were significantly different, less challenging and less prestigious than the classes she had formerly taught.  Prior to suffering

the stroke, Moyes had taught both introductory and advanced day and evening classes. Keiser contends that Moyes schedule was determined and assigned specifically taking into account the letter of August 8, 2005, as well as subsequent letters from Moyes' doctor which restricted her working hours per week. During the summer period following the 2005/06 school year, Moyes was assigned to work in the library rather than teach any classes.  Moyes again alleges that the summer class assignments represent a significant departure from her prior schedule and employment on account of her stroke.

During the following school year of 2006/07, Moyes was again assigned only introductory level evening classes and assigned only library duties for the subsequent summer period. In that same summer period, classes that were formerly taught by Moyes were assigned to two male instructors, Don Aronson ("Aronson") and Ron Fowler ("Fowler"). Moyes alleges that Aronson and Fowler were assigned these courses in spite of the fact that they did not possess her teaching qualifications and were not as well regarded by students. Although at this time Moyes was allowed to teach her first advanced class following her stroke, she claims this was only because students had specifically requested that she teach the course rather than the male instructor Aronson.

 After teaching during the 2007/08 school year, Moyes was fired from her job at the end of April 2008. Moyes alleges that she was informed of her termination on April 26, 2008 upon being told by Keiser president Mark Gutmann ("Gutmann") that there were no summer classes for her to teach and that she

would be paid only through the following week. According to Moyes, there were classes available on the schedule for her to teach but they were only being offered to the less qualified male instructors Aronson and Fowler.

Moyes additionally alleges that during the three year period in which she worked following her stroke, she was demeaned, belittled, treated with hostility, and marginalized by her supervisor at Keiser, Dean Del Signore ("Del Signore"). Moyes maintains that during that same time period, Del Signore lavished praise and acknowledgment upon male employees at Keiser performing the same or similar work to that for which she was mistreated.

Moyes' amended complaint (doc. 13) contains four counts based upon the aforementioned allegations. Count I is a claim pursuant to the ADA for disparate treatment and hostile work environment based on her asserted disability. Count II is an alternative ADA claim for disparate treatment and hostile work environment based on Moyes' allegation that she was "regarded as" disabled by Keiser. Count III is a claim for disparate treatment based on Moyes' sex under the Civil Rights Act. Lastly, Count IV is a retaliation claim pursuant to the FMLA. In response to these allegations, Keiser has filed a Motion for Summary Judgment (doc. 55) for the court to consider.

## Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), a court should grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is

"material" if it might affect the outcome of the case under the governing law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine"

if the record, taken as a whole, could lead a rational trier of fact to find for the

nonmoving party.  Id.

　　　The moving party bears the burden of showing that no genuine issues of

material fact exist.  Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000).  "In

assessing whether the movant has met this burden, the courts should view the

evidence and all factual interferences therefrom in the light most favorable to the

party opposing the motion."  Burton v. City of Belle Glade, 178 F.3d 1175, 1187

(11th Cir. 1999) (quoting Clemons v. Dougherty County, 684 F.2d 1365, 1368-69

(11th Cir. 1982)).  Similarly, courts should resolve all reasonable doubts about

the facts in favor of the nonmoving party.  Id.

　　　If the moving party satisfies this burden, then the burden shifts to the

nonmoving party to produce evidentiary material that demonstrates a genuine

issue of fact for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The

non-movant "must do more than simply show that there is some metaphysical

doubt as to the material facts . . . . Where the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, there is no 'genuine

issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586-87 (1986) (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289

(1968)).  The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251.

## Counts I and II : Disability Discrimination

In order to establish a prima facie case of discrimination under the ADA, the plaintiff must demonstrate (1) a statutorily covered disability or that her employer regarded her as having a statutory disability, (2) that she was qualified to perform the job, and (3) unlawful discrimination because of the disability. Greenberg v. Bellsouth Telecomms, Inc., 498 F.3d 1258, 1263 (11th Cir. 2007); Palmer v. Albertson's, LLC, 2010 WL 785652 (N.D. Fla. March 3, 1010).  This standard derives from the language of the ADA, which mandates that "no [employer] shall discriminate against a qualified individual with a disability because of the disability of such an individual."  Id.; 42 U.S.C. § 12112(a) (2006).

### 1.Statutory Disability

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such impairment; or, (C) being regarded as having such impairment." Albright v. Columbia County Bd. of Educ., 135 F. App'x 344, 345 (11th Cir. 2005) (quoting 42 U.S.C. § 12102(2)). Moyes alleges discrimination pursuant to the first and third prongs of this definition.

Impairment as defined under 45 C.F.R. § 84.3 (j)(2)(i)(A) includes any physiological disorder or condition affecting the neurological, musculoskeletal

and respiratory systems. However, the existence of a physical impairment does not constitute a disability under the ADA unless the impairment substantially limits a major life activity. Durley v. APAC, Inc., 236 F.3d 651, 657 (11th Cir. 2000); Standard v. A.B.E.L. Services Inc., 161 F.3d 1318, 1328 (11th Cir. 1998). Courts are to make such determinations on a case-by-case basis. Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1155 (11th Cir. 2005).

Regulations issued by the EEOC define "major life activities" to include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i) (2008). "Substantially limits" means that an individual cannot "perform a major life activity that the average person in the general population can perform" or the individual is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the . . . average person." 29 C.F.R. § 1630.2(j)(2008).

Through medical records and other evidence, Moyes alleges that she is substantially limited in the activities of walking, running, lifting, standing and working. While Keiser acknowledges that Moyes suffered a stroke and complications as a result, the basis of Keiser's arguement is that the effects of the stroke did not substantially limit her from any major life activity. Keiser supports this contention by highlighting Moyes' ability to live alone and care for herself as well as by stating that Moyes suffered from no physical limitations that prevented her from performing her job duties. While Moyes did live alone and

cared predominantly for herself, she is nonetheless limited in performing many of the tasks and daily activities specifically listed under 29 C.F.R. § 1630.2(i) (2008). The allegation by Keiser that Moyes had no physical limitations that prevented her from performing her teaching duties ignores the possibility that limitations in walking, standing and lifting, may have significant bearing on the ability to teach.

Keiser also presents stroke-specific case law to support the contention that Moyes' impairment was neither permanent nor sufficiently severe to substantially limit any major life activity. However, "the ADA requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their *own experience* . . . is substantial." Toyota Motor Mfg., Inc. v. Williams, 534 U.S. 184, 198 (2002). As the Supreme Court suggests, the consequences of Moyes' stroke on her ability to perform even basic tasks present an individually unique determination unfit for adherence to the specific circumstances or precedents of other individual cases. Therefore, factual determinations as to the effect of the stroke on Moyes' major life activities or her status as disabled under Count I, are best left to a jury.

Pursuant to the third prong of the ADA's disability definition, Moyes alternatively alleges that she suffered from a disability because Keiser regarded her as having an impairment that substantially limited one or more major life activities. 42 U.S.C. § 12102(2). Where a person is regarded as substantially

limited in a major life activity, the individual may be a victim of discrimination regardless of whether or not he or she is in fact substantially limited. School Board of Nassau County, Florida v. Arline, 480 U.S. 273, 282 (1987). There are two ways in which employer may be found to regard a person as having a disability: (1) mistaken belief that a person has a physical impairment that substantially limits one or more life activities, or (2) mistaken belief that an actual, non-limiting impairment substantially limits one or more major life activities. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). Common to each prong of the ADA definition is the requirement that the individual not in fact have an impairment that, absent the misperceptions of others, would substantially limit a major life activity.  Id.

Under the second prong of the regarded disability analysis, Moyes claims that Keiser mistakenly believed Moyes' stroke based impairments substantially limited her in the major life activity of working.  Thus, Moyes must show that after the stroke Keiser mistakenly perceived her as unable to work or teach as compared to the average person who received comparable training.  29 C.F.R. § 1630.2(j)(3)(I)(2008).

 To support her claims Moyes points to Keiser and Del Signore's refusal to allow her to teach the same advanced courses she taught prior to her stroke, in spite of her superior qualifications to those who were assigned the classes. Moyes states that Del Signore knew of Moyes' hourly limitations on account of the stroke, yet continually reassigned classes which Moyes' limitations did not

prevent her from teaching.  Lastly, Moyes states that she was fired on account of her inability to work the hours required of her position, in spite of the fact that she obtained medical clearance for additional hours each time she was told that they were needed.

Keiser responds that Moyes allegations as to how Keiser regarded her disability are merely derived inferences from the employment treatment Moyes received. While it is true that Moyes has provided little support to show the motivation or perception behind Keiser's employment actions toward her, questions about the subjective state of mind of an employer, "are not easily proven through deposition transcripts and affidavits, and are therefore generally more appropriate for the jury than for the judge." Mendiola v. Vision Hospitality, 588 F. Supp.2d 1295, 1303 (M.D. Ala. 2008).  This Court is therefore reluctant to grant summary judgment where there is a possibility that the employer perceived an individual to be disabled.

Keiser admits knowledge of Moyes' hourly limitations after her stroke. Keiser's awareness of the limitations must be considered in conjunction with the restrictive actions taken against Moyes, who at the time of restriction claims to have been able to perform all job functions required of her under Keiser's policies.  Together these factors establish the possibility that a jury could find Keiser mistakenly regarded Moyes' impairments as limiting her ability to work. As a result, Keiser has been unable to extinguish any and all doubts as to whether or not Moyes was regarded as disabled in accordance with Count II.

2.Job Qualifications

In order to establish and ADA disability claim, in addition to establishing that she is statutorily disabled, Moyes must demonstrate that she was a qualified individual for the job. Greenberg v. Bellsouth Telecomms, Inc., 498 F.3d 1258, 1263 (11th Cir. 2007). Determining whether Moyes is a qualified individual is a two-prong analysis. See Reed v. Heil Co., 206 F.3d 1055, 1062 (11th  Cir. 2000); see also Downing v. United Parcel Service, Inc., 215 F.Supp.2d 1303, 1309 (M.D. Fla. 2002). The first step is to determine if the plaintiff has the perquisite skill, experience and education for the position. See Downing at 1310. The second step is to determine if the Plaintiff can perform the essential functions of the employment position. See id. As Keiser concedes that Moyes had the necessary skills for her position it remains to be determined whether or not Moyes was able to perform the essential functions of her teaching position.

An essential function of a job is either the reason why the job exists or a function required in performance of the job. See Ray v. Kroger Co., 2003 WL 230118292, at *3 (11th Cir. 2003). Written descriptions of employment duties as well as employer's judgment are taken into account, but the determination of essential job functions in ultimately a factual determination. See id. If the employee is unable to perform a job's essential functions, the court then must examine whether a reasonable accommodation could have allowed the employee to perform the necessary functions. See id.

Kaiser asserts that Moyes could perform all of the essential functions of a full-time teaching position, except that she could not work a full schedule on account of her 25 and then 30 hour a week restrictions. Moyes responds that in spite of the restrictions, she never ceased to have the ability to perform full time work under Keiser's policies and practices. In support of this claim, Moyes points out that teaching morning courses which lasted five hours a day Monday through Friday, for a total of 25 hours, was considered full time work under Keiser's own policies. Additionally, for multiple terms following her stroke, Moyes alleges that in receiving her teaching assignments she was never notified of any hourly restriction that rendered her unqualified for her position. She further alleges that Keiser never referenced a set number of hours as an employment requirement until the time of and after Moyes was terminated.

Other than the mention of her hourly restriction, Keiser offers no evidence to suggest Moyes was unqualified or that a specific hourly employment requirement existed at the time of her employment. Without more information as to Keiser's specific employment requirements and practices, and considering that morning courses required no more than 25 committed class hours per week, it is extremely difficult to establish without a doubt that Moyes was unable to perform the essential functions of her teaching job.

3.Unlawful Disability Based Discrimination

The final element that Moyes must establish to bring a valid ADA claim is unlawful discrimination based on her disability. Greenberg v. Bellsouth Telecomms, Inc., 498 F.3d 1258, 1263 (11th Cir. 2007); Palmer v. Albertson's, LLC, 2010 WL 785652 (N.D. Fla. March 3, 1010). Title VII of the Civil Rights Act expressly prohibits discrimination with respect to an employee's, "compensation, terms, conditions, or privileges of employment." 42 U.S.C.§ 2000e-2(a)(2006). A bright-line test has never been adopted to establish the necessary effect on a plaintiff's employment required for alleged discrimination to be actionable, and thus the determination is best made on a case by cases basis. Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001); see also Gupta v. Florida Bd. of Regents, 212 F.3d 571, 586 (11th Cir. 2000). Within this case specific adverse employment analysis, Courts have consistently found a change of position to be sufficiently adverse when involving reductions in pay, prestige, or responsibility. See, e.g., Doe v. Dekalb County School Dist., 145 F.3d 1441, 1448 (11th Cir. 1998) ("Where a plaintiff has allegedly suffered termination, demotion, reduction in pay, loss of prestige, or diminishment of responsibilities… the relevant question in such cases is whether such patently adverse actions actually took place."); Coppinger v. Wal-Mart Stores, Inc., 2010 WL 1138817 at *4 (N.D. Fla. 2010)( holding loss of supervisory duties to be a materially adverse under a discrimination claim as significant changes in responsibilities alter the conditions and privileges of employment).

Moyes alleges adverse employment action through the assignment of only introductory level courses rather than the advanced courses she previously taught. She bases this adversity claim on the alleged loss of prestige and opportunity for professional growth suffered from teaching only basic courses. Additionally, Moyes alleges that assignment to non-instructor library positions represents an even greater loss of prestige and opportunity.

Keiser contends that aside from the alleged termination, Moyes is unable to show a serious and material change as required for adverse employment actions. However, precedent has clearly established that loss of prestige or responsibility may constitute the material change necessary for adverse employment actions regardless of termination. See, e.g., Doe, 145 F.3d at 1448; Coppinger, 2010 WL 1138817 at *4. In light of this precedent, Keiser has offered very little to establish without a doubt that the actions taken against Moyes were not adverse under Title VII.  Instead, Keiser seeks to defend the challenged actions by establishing legitimate non-discriminatory reasons for the employment actions toward Moyes.

In assessing an employer's proffered reasons the court must accept them as given. See Gaston v. Home Depot USA, Inc., 129 F.Supp.2d 1355, 1373 (S.D. Fla. 2001). If the proffered reason might motivate a reasonable employer, a plaintiff must meet that reason head on and rebut it; the plaintiff cannot succeed by simply quarreling with the wisdom of that reason. Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000). In order for a plaintiff to show an

employer's proffered reasons are merely a pretext for discrimination, she must show that the proffered reasons were not the true reason for the decision. <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981). This is accomplished, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Id.</u>  In specific regards to summary judgment motions, courts must determine whether a plaintiff has demonstrated sufficient weakness, implausibility, inconsistency, incoherence, or contradiction in the employer's justifications such that a reasonable fact finder could fail to find them believable. <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997). Corroborative or "me too" evidence is admissible to prove the intent of an employer to discriminate and retaliate. <u>Goldsmith v. Bagby Elevator Co., Inc.</u>, 513 F.3d 1261, 1286 (11th Cir. 2008); <u>Phillips v. Smalley Maint. Servs., Inc.</u>, 711 F.2d 1524, 1532 (11th Cir. 1983).

Keiser's justifications for the actions taken against Moyes center upon the medical restriction in the hours and schedule she was able to work. Keiser further attempts to justify the actions taken toward Moyes based on diminished university enrollment and a corresponding need for faculty and department downsizing. Moyes attempts in a variety of ways to show the weakness, inconsistencies, contradiction and implausibility of Keiser's proffers. Of these attempts, Moyes most compelling argument for pretext is found in the "me too"

corroborative evidence of other impaired Keiser employees and the employment actions taken against them.

Moyes offers evidence of three Keiser employees, all of whom were seriously injured or suffered significant physical limitations while employed at Keiser, and all of whom suffered similar adverse employment actions to Moyes on account of their injuries. Michael Nappi ("Nappi") suffered a leg injury requiring surgery, FMLA medical leave, and severely limiting his ability to walk. Upon his return to Keiser following FMLA leave, Nappi's teaching status was changed from full time to adjunct and he was not assigned to teach any courses. Arleen Briggs suffered from leg injuries and sleep apnea, took leave under the FMLA and was then terminated after Keiser refused to accommodate her medical conditions. Stephen Oaks ("Oaks") was severely restricted in his ability to walk, stand or sit for extended periods of time. Oaks enjoyed normal working conditions until Keiser learned of his disabilities, at which point his accommodation requests were poorly received, he was issued multiple written warnings and ultimately terminated.

Even taking Keiser's proffered employment explanations to be true, the similarity of these employees' physical circumstances and the actions taken against them to those of Moyes cannot be ignored. Through presentation of this corroborating evidence and pattern of action at Keiser, Moyes has succeeded in establishing the possibility that discriminatory reasons motivated Keiser's actions.

In light of Moyes evidence and arguments, Keiser has failed to establish

that no genuine issue exists as to whether or not Moyes was statutorily disabled,

was qualified for her job at Keiser, or was unlawfully discriminated against

because of her disability. This court therefore cannot grant Keiser's Motion for

Summary Judgment pursuant to Counts I and II. Fed. R. Civ. P. 56(c).

## Count III: Gender Discrimination

Moyes bears the burden of proving that gender was a determining factor

in Keiser's adverse actions toward her and therefore must first establish a prima

facie case of discrimination. Walker v. NationsBank of Florida N.A., 53 F.3d

1548, 1555 (11th Cir. 1995). To establish a prima facie case of gender

discrimination, Moyes must prove: 1) she is a member of a protected class; 2)

she was subjected to adverse employment action; 3) her employer treated

similarly situated persons outside of her protected class more favorably; and 4)

she was qualified for the position. See Debose v. Florida Dept. of Children and

Families, 2008 WL 3926858, *4 (N.D. Fla. 2008).

Gender is protected against unlawful employment practices under the

Civil Rights Act. 42 U.S.C. § 2000e-2(a)(1)(2006). Moyes as a woman is a

member of a protected class and thus satisfies the first element for gender

discrimination claims. Furthermore, because Moyes' employment qualifications

have already been discussed, and the Court's analysis has established the

possibility that a finder of fact could reasonably find Moyes was subject to

adverse employment actions, for the purposes of Gender Discrimination analysis the Court will address only element 3.

The determination of whether employees are similarly situated must consider whether the employees are involved in the same or similar conduct and disciplined in differed ways. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). When making that determination, the quantity and quality of the comparator's conduct must be nearly identical to prevent courts from second guessing employer's reasonable decisions. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004). Summary judgment is appropriate where a plaintiff fails to show the existence of a similarly situated employee and no other evidence of discrimination is present. Holifield, 115 F.3d at 1562.

As males, both Aronson and Fowler are outside of Moyes protected class. However, Moyes contends that rather than being similarly situated, Aronson and Fowler were in fact more poorly situated than Moyes and yet still received favorable treatment. According to Moyes, her replacement Aronson lacked formal computer graphics education and was unpopular among students. Fowler on the other hand was hired on emergency basis and had no relevant teaching experience. Considering the qualification disparity alleged by Moyes, coupled with the fact that she faced a reduced teaching schedule and ultimately termination while male professors Aronson and Fowler continued to teach, it would not be unreasonable for a finder of fact to find Moyes has succeeded in establishing a prima facie case of gender discrimination.

Keiser proffers the same justifications for the treatment of Moyes as were given in opposition to the disability based claims, and is afforded the same benefit of the doubt with respect to the explanations. See Gaston v. Home Depot USA, Inc., 129 F.Supp.2d 1355, 1373 (S.D. Fla. 2001).The burden is therefore on Moyes to establish that Keiser's justifications are merely pretext to gender discrimination, and that a finder of fact could reasonably determine that the actions were motivated by gender.  See Debose v. Florida Dept. of Children and Families, 2008 WL 3926858, *4 (N.D. Fla. 2008) ("Plaintiff ultimately bears the burden to prove that gender was a determining factor in Defendant's employment decision[.]").

Unlike in her efforts to prove pretext for discrimination, Moyes has no corroborating "me too" evidence to support her gender discrimination claims. She merely attempts to rebut each of Keiser's explanations.

In response to Keiser's claim that Moyes' hour limitations were the reason she was terminated over Aronson and Fowler, Moyes first points out that her hourly limitations were not offered as one of the reasons for her firing until long after the email informing her of termination.  Where there are discrepancies in an employer's explanations for a plaintiff's termination, a reasonable juror could infer that the explanations were pretextual rationalizations to combat evidence of discrimination. See EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994).

Secondly, Moyes argues that Keiser did not include a minimum hourly requirement in its full-time faculty agreement until months after her termination.

After the fact timing of documentation done in anticipation of litigation may reasonably give rise to an inference of pretext. See  Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1177 (10th Cir. 2006).

Thirdly, Moyes claims she was working the number of hours required or her to perform her job duties.

In response to Keiser's claim that the computer graphics department was being downsized and that there was insufficient enrollment to support Moyes' continued employment, Moyes argues that Keiser was not in fact downsizing the computer graphics department. "It is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993)).

The inconsistencies, contradictions, and weaknesses Moyes has demonstrated in Keiser's justifications for her treatment are such that a under the law a reasonable fact finder could find Keiser's explanations unworthy of belief. As Keiser has been unable to rebut Moyes' preliminary showing of gender discrimination, summary judgment must be denied on Count III.  Fed. R. Civ. P. 56(c).

### Count IV: Retaliation

In addition to alleging disability and gender discrimination, Moyes asserts an FMLA retaliation claim.  In an FMLA retaliation claim, the plaintiff must show that the denial was motivated by an impermissible retaliatory or discriminatory

reason. <u>Russell v. North Broward Hosp.</u>, 346 F.3d 1335, 1340 (11th Cir. 2003).

To state a prima facie claim for retaliation, a plaintiff must show: (1) that he

engaged in statutorily protected expression; (2) that he suffered an adverse

employment decision; and (3) that a causal link existed between the protected

activity and the adverse action. <u>See</u> <u>Walker v. Elmore County Bd. of Educ.</u>, 379

F.3d 1249, 1252 (11th Cir. 2004).

The statute of Limitations on FMLA claims is two years, but is extended to

three years if the violation is willful. <u>See</u> <u>U.S.C. § 2617 (c)(1)(2006).</u>

Keiser asserts that Moyes has no evidence to establish that any of the

alleged employment actions were willful violations by Kieser, that the statute of

limitations must accordingly be two years, and that the allegations regarding

events that occurred prior to July 16, 2007 are thus untimely.  However, the

entirety of Moyes' arguments and evidence as discussed to this point raise the

distinct possibility that a finder of fact could find Keiser's behavior to be a willful

violation.  Because the determination of willfulness is best left to a finder of fact,

this Court is unwilling at this point to impose the two year statute of limitations on

Moyes' FMLA claim.

Keiser does not dispute that Moyes engaged in the statutorily protected

expression of qualified FMLA leave. The possibility that Moyes could be found by

a finder of fact to have suffered an adverse employment decision has already

been discussed and is a question of fact generally left for a jury to decide. <u>See</u>

<u>Burlington Northern & Santa Fe Railway Co. v. White,</u> 548 U.S. 53 (2006).

Keiser's dispute centers on the third element of Moyes prima facie case of retaliation, the existence of any causal link between Moyes' FMLA leave and any alleged and timely adverse actions taken against her.

In order to establish a causal link, a plaintiff must show that the protected activity and adverse action were not fully unrelated. See Clover v. Total Systems Service, Inc., 176 F.3d 1346, 1354 (11th Cir. 1999). Evaluation of alleged adverse actions is not limited to a final decision to terminate or not to promote. Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998). In determining whether a prima facie case of causation has been made, the 11th Circuit has focused primarily on timing and evidence of ongoing antagonism. See, e.g., id. at 1455-57. Thus, courts must evaluate the totality of the collective series of alleged adverse employment actions to determine whether a retaliation claim exists from the allegations. See, e.g., id. at 1455-56.

Moyes alleges a pattern of adverse actions taken by Keiser toward her beginning immediately after she returned from FMLA leave. These alleged actions include placement in administrative duties rather than teaching, denial of her prior advanced teaching position each term subsequent to FMLA leave, continual library assignments and ultimately termination.  Keiser argues that Moyes cannot establish a causal connection between her FMLA leave and the challenged employment actions on account of intervening events, namely, continued hourly work restrictions.  However, such explanations on the part of Keiser are more appropriately considered as proffers for the alleged actions

rather than intervening events that break the chain of causation, particularly where this court must examine the totality of the circumstances. See Wideman 141 F.3d at 1455-57. While proffers are to be considered in assessing Keiser's actions, the timing and nature of the actions taken against Moyes have presented issues sufficiently suggestive of retaliatory motive for jury consideration.

Addressing Keiser's proffers, once the plaintiff establishes a prima facie case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse action. Crawford v. City of Fairburn, 482 F.3d 1305, 1308 (11th Cir. 2007). If the employer articulates such a reason for its treatment of the plaintiff, then the burden returns to the plaintiff to produce evidence sufficient to raise a genuine issue of material fact with regard to whether the employer's proffered reason for the adverse action was pretextual. Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1103-04 (11th Cir. 2001).

As has now been discussed at great length, Keiser is not without non-discriminatory or retaliatory justifications for the actions taken against Moyes. However, it remains the case that Moyes, through her showing of inconsistencies, contradictions and weaknesses in Keiser's proffered explanations, has succeeded in demonstrating issues of fact with which a reasonable jury could fail to believe Keiser's proffers. Therefore, because Moyes has produced sufficient evidence to support a jury finding of prima facie retaliation, summary judgment is denied on Count IV. Fed. R. Civ. P. 56(c).

**Conclusion**

Keiser is not entitled to summary judgment on Moyes' disability claims as material issues of fact remain unresolved as to whether or not Moyes was disabled, perceived as disabled, qualified to work, and unlawfully discriminated against based on her disability or perceived disability. Similarly, Keiser is not entitled to summary judgment on Moyes' gender discrimination claim as material issues of fact remain unresolved as to whether or not Moyes was subject to adverse employment actions, whether members outside her protected class were treated more favorably, and again whether she was qualified for her position. Lastly, Keiser is not entitled to summary judgment on Moyes' retaliation claim as material issues of fact remain unresolved as to whether or not Moyes' FMLA leave was the cause of adverse employment actions taken against her. For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant Keiser's motion for summary judgment (doc. 55) is denied on all counts.

DONE AND ORDERED this <u>twenty-eighth</u> day of September, 2010.

_s/ Stephan P. Mickle_

Stephan P. Mickle
Chief United States District Judge